Craig K. Perry
Nevada Bar No. 3786
CRAIG K. PERRY & ASSOCIATES
6210 N. Jones Blvd. #753907
Las Vegas, Nevada 89136-8985
Telephone: (702) 228-4777
Facsimile: (702) 943-7520
cperry@craigperry.com

Chris R. Miltenberger, Esquire
The Law Office of Chris R. Miltenberger, PLLC
1360 N. White Chapel, Suite 200
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com
*Subject to Pro Hac Vice*

Eric H. Weitz, Esquire
Max S. Morgan, Esquire
**THE WEITZ FIRM, LLC**
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com
*Subject to Pro Hac Vice*

*Attorneys for Plaintiff Stephan Campbell*

UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| STEPHAN CAMPBELL, *on behalf of himself and all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> EVERYTHING BREAKS, INC., <br><br> Defendant. | Case No.: 2:23-cv-00861-GMN-EJY <br><br> **PLAINTIFF STEPHAN CAMPBELL'S MOTION TO COMPEL DISCOVERY FROM DEFENDANT EVERYTHING BREAKS, INC.** <br><br> **ORAL ARGUMENT REQUESTED** |

I. INTRODUCTION

This is a class action brought pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. (*See* Dkt. 1 (Compl.)). Defendant, Everything Breaks, Inc. ("Everything Breaks" or "Defendant"), is an auto and home warranty company that placed numerous calls to Plaintiff Stephan Campbell ("Mr. Campbell" or "Plaintiff") soliciting him to purchase a vehicle warranty. (*See id.* at ¶¶ 33-49). At the time of the calls, Mr. Campbell's telephone number was registered on the National Do-Not-Call registry. (*Id.* at ¶ 37). In addition, Mr. Campbell communicated to Everything Breaks that he was not interested in a vehicle warranty and did not need future calls from Everything Breaks, but received additional calls nonetheless. (*Id.* at ¶¶ 46-50). Mr. Campbell seeks to certify two classes, one for Everything Breaks' violation of the TCPA's National Do-Not-Call Registry provisions (*id.* at ¶¶ 62, 77-82), and another for violation of the TCPA's internal do-not-call rules. (*Id.* at ¶¶ 62, 83-91).

Everything Breaks does not dispute that it called Mr. Campbell but contends that on June 25, 2022, approximately *a year* before it began calling Mr. Campbell, Mr. Campbell consented to receive calls from Everything Breaks by requesting an insurance quote via the website www.ottoinsurance.com.[1] Ex. A (Interrog. Resp. 6). Even if this allegation is true, Everything Break's purported consent defense fails because the manner in which the alleged website, www.ottoinsurance.com, attempts to obtain consumer consent is <u>improper</u>. This makes all calls to leads originating from the website www.ottoinsurance.com illegal if the telephone numbers were also on the National Do-Not-Call registry. This is because for telemarketing calls, the caller must provide a "clear and conspicuous disclosure" when obtaining express written consent from a consumer. *See* 47 CFR § 64.1200(f)(9); *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 27 FCC Rcd 1830, 1844, para. 33 (2012). The Federal Communications Commission ("FCC") recently ruled that a TCPA consent disclosure whereby the consumer agrees to receive robocalls from "marketing partners" with a link to a list of a large number of marketing partners on a secondary website is **not** sufficient to demonstrate that the called party consented to the calls from **any one of** the listed

---

[1] The website www.ottoinsurance.com is owned and operated by Otto Quotes, LLC ("Otto").

marketing partners. *See In re FCC Orders Voice Serv. Providers to Block Student Loan Robocalls*, 37 FCC Rcd 14133, 14139 (F.C.C. Dec. 8, 2022).

Here, because the "disclosure" Everything Breaks relies upon for consent used a secondary website listing approximately 3,328 different "marketing partners" only viewable if the consumer clicked on a hyperlink and reviewed a second webpage, Everything Breaks lacked the requisite consent for the calls it placed to Mr. Campbell and the class members. *See id.*

In an effort to obtain the requisite information to support his forthcoming motion for class certification under Fed. R. Civ. P. 23, Mr. Campbell propounded discovery requests seeking documents and information related to the calls Everything Breaks placed to consumers or "leads" it obtained in the same manner it allegedly obtained Mr. Campbell's information, *i.e.*, from the website www.ottoinsurance.com. Everything Breaks has chosen to play games, unnecessarily increase the cost of litigation through evasive responses, and improperly resists discovery with baseless objections. For the reasons set forth herein, the Court should compel Everything Breaks to respond to Interrogatories 12-15 and Request for Production Nos. 13, 14 and 21.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's First Set of Discovery to Defendant Everything Breaks

Mr. Campbell served his First Set of Discovery to Defendant Everything Breaks on August 29, 2023. Declaration of Max S. Morgan ("Morgan Decl.") ¶ 2. After requesting an extension of time, Everything Breaks responded to Plaintiff's First Set of Discovery on October 26, 2023. *Id* at ¶ 3.

#### 1.    *Request Nos. 13 and 14*

Request No. 13 asked Everything Breaks to produce documents "sufficient to identify the number of leads provided to you by Otto during the relevant time period." Ex. A at 26. Request No. 14 asked Everything Breaks to produce "all lead information provided to you by Otto during the relevant time period, including but not limited to the full name, address, email, phone number and any other information associated with each individual lead." Ex. A at 27. Everything Breaks objected to both requests and responded "none", subject to its objections. Ex. A at 26-27.

### 2. *Request No. 21*

Request No. 21 asked Everything Breaks to produce "the call records and all documents containing any of the following information for each outbound telemarketing call or text message sent by you or your vendors to a lead obtained from Otto: (a) the date and time; (b) the caller ID; (c) the content of the text message or content/purpose of the call; (d) the result; (e) identifying information for the recipient; (f) whether the recipient was on your internal do-not-call list at the time of the calls; and (g) any other information stored by the call detail records." Ex. A at 31. Everything Breaks objected but agreed to produce responsive documents. Ex. A at 31. Everything Breaks has **not** produced this information.

### 3. *November 2, 2023 Meet and Confer Teleconference*

On October 27, 2023, Mr. Campbell wrote to Everything Breaks and advised that documents responsive to Request No. 21 had not been produced. Morgan Decl. ¶ 4. On November 2, 2023, the parties held a telephonic meet and confer. Mr. Campbell requested, *inter alia,* the call records be produced and clarification regarding Everything Breaks' responses to Request Nos. 13 and 14 as they were inconsistent with Everything Breaks' position that it obtained Mr. Campbell's lead information from Otto. Morgan Decl. ¶ 6.

Everything Breaks advised that it did *not* obtain Mr. Campbell's information *directly* from Otto and therefore responded "none." Morgan Decl.¶ 7. Mr. Campbell advised that his request seeks information that originated from Otto (in the same manner as Mr. Campbell's information) and requested that Everything Breaks amend its response to provide the relevant information even if there were unidentified "middle men" in the chain from Otto to Everything Breaks.[2] Morgan Decl. ¶ 8. While Everything Breaks agreed to review and consider amending certain other

---

[2] Everything Breaks has not identified any "middle men" and, if such exist should have been identified in response to Interrogatory Nos. 2 and 3. Interrogatory No. 2 asked Everything Breaks to identify "all employees or vendors involved in making outbound calls or text messages promoting [its] goods and services . . . [including] third parties that [it] contract[s] with who make telemarketing calls or provide leads." Ex. A at 6. Interrogatory No. 3 asked Everything Breaks to "[i]dentify and describe the work of each employee or vendor identified in response to Interrogatory No. 2". Ex. A at 7. In response, Everything Breaks objected but identified the following vendors and employees: Otto Quotes, LLC, Capital Econ, S.C. DE R.I. DE C.V., Five9, Inc., Roger Guerra and John Foster. Ex. A at 6-7. Everything Breaks provided an agreement for Five9, Inc. and Capital Econ, S.C. DE R.I. DE C.V. but did not provide any agreement or explanation regarding the involvement of Otto Quotes, LLC, Roger Guerra or John Foster. *See id.*

responses, Everything Breaks refused to provide the call records and also refused to explain *how* it obtained Mr. Campbell's information that originated with Otto. Morgan Decl. ¶ 9.

### 4. *Mr. Campbell's Additional Efforts to Obtain the Calling Information*

Mr. Campbell also attempted to obtain the relevant information from third parties. He first subpoenaed Otto. Morgan Decl. ¶ 10. Otto responded that it had no agreement, communications or transactions with Everything Breaks. Morgan Decl. ¶ 11. Otto did, however, produce a document indicating Mr. Campbell's lead was sold *only* to "QuinstreetBidding." Morgan Decl. ¶ 12. Mr. Campbell then served a subpoena on QuinStreet. Morgan Decl. ¶ 13. QuinStreet responded that it had no records related to Mr. Campbell and did not purchase any leads from Otto. Morgan Decl. ¶ 14. Mr. Campbell then issued additional discovery to Everything Breaks in an attempt to circumvent Everything Breaks' evasive responses and narrow interpretation of the prior requests.

### 5. *Interrogatory Nos. 12, 13, 14 and 15*

Interrogatory Nos. 12, 13, 14 and 15 were propounded in an attempt to circumvent Defendant's evasive responses and refusal to produce information regarding the leads it obtained that originated from Otto. The interrogatories are as follows:

- 12. For the person or entity that sold or otherwise provided you with Plaintiff's Lead Information, identify the total number of Leads obtained from that person or entity during the relevant time period.

- 13. For the person or entity that sold or otherwise provided you with Plaintiff's Lead Information, identify the total number of Leads obtained from that person or entity during the relevant time period that originated with the website ottoinsurance.com.

- 14. Identify all Leads or User Data obtained from the person or entity identified in response to Interrogatory No. 12 for the relevant time period. For each Lead or User Data, identify the following information: a) name; b) address; c) email address; and d) telephone number.

- 15. Explain how you obtain User Data or Leads that originate with the website ottoinsurance.com and how the User Data or these Leads

are contacted or called on your behalf. A responsive answer will include a description of how User Data or lead information is obtained (e.g., via email, API, data transfer, file share, etc.) and how that User Data lead information is provided to any third party that places calls on your behalf (e.g., via email, API, data transfer, file share, etc.).

Everything Breaks objected and refuses to respond to these Interrogatories. Ex. C at 6-10.

### 6.   *January 5, 2023 Meet and Confer*

The parties held another telephonic meet and confer on January 5, 2023.  Morgan Decl. ¶ 17.  The parties were unable to resolve their discovery disputes with respect to Interrogatory Nos. 12-15 and Request Nos. 13, 14, and 21.  Morgan Decl. ¶ 18.  Everything Breaks has not produced the class calling records and refuses to respond to discovery seeking how it obtained Mr. Campbell's information from Otto.  Morgan Decl. ¶ 19.

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]"  In addition, "a party may move for an order compelling disclosure of discovery." Fed. R. Civ. P. 37(a)(1).  Such a motion is appropriate where "a party fails to answer an interrogatory submitted under Rule 33" and where "a party fails to produce documents . . . as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B)(iv).

In Nevada, "[p]arties resisting discovery carry the heavy burden of showing why discovery should be denied."  *Collins v. Landry's Inc.*, Civ. No. 2:13-cv-01674-JCM-VCF, 2014 WL 2770702, 2014 U.S. Dist. LEXIS 83003, at *6 (D. Nev. June 17, 2014) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).  The party opposing discovery has the burden of showing that the discovery is irrelevant, overly broad, or unduly burdensome.  *See id.*  "To meet this burden, the objecting party must specifically detail the reasons why each request is improper." *Id.* at *6-7.  "[T]he party opposing discovery must allege (1) specific facts, which indicate the nature and extent of the burden, usually by affidavit or other reliable evidence, or (2) sufficient detail regarding the time, money and procedures required to comply with purportedly improper request."  *Id.* at *7 (citations omitted).

## IV. ARGUMENT

### A. Everything Breaks Should be Compelled to Produce Information and Documents Related to the Calls Relevant to the Proposed Classes.

Mr. Campbell is entitled to discovery related to the calls Everything Breaks made to the putative class members in this TCPA case. Requesting copies of a list of persons that were the recipients of telemarketing calls is a standard practice in TCPA class litigation. "[A] list of phone numbers may very well bear direct relevance to a violation of the TCPA concerning the dialing of the very phone numbers listed." *Knutson v. Schwan's Home Serv., Inc.*, No. 12-cv-0964, 2013 WL 3746118, 2013 U.S. Dist. LEXIS 98735, at *11-12, (S.D. Cal. July 15, 2013) (ordering the production of a "dial list" consisting of everyone in the plaintiff's proposed class). Such information is relevant because it relates to issues upon which a district court must pass in deciding whether a suit should proceed as a class action under Rule 23, such as numerosity, ascertainability, commonality, and predominance. For these reasons, production of call lists are *routinely* ordered in courts across the country. *See, e.g., Warren v. Credit Pros Int'l Corp.*, No. 3:20-cv-763, 2021 WL 3552254, 2021 U.S. Dist. LEXIS 79150, at *21 (M.D. Fla. Apr. 26, 2021) ("Plaintiff is also entitled to receive—prior to class certification—the documents and information related to the call logs, transmission summaries, outbound call lists, and the information contained therein bearing on Defendant's communications with the putative class members, because . . . such information is relevant both to the merits of Plaintiff's claims and to the numerosity and commonality requirements in Rule 23, Fed.R.Civ.P."); *O'Shea v. Am. Solar Sol., Inc.*, No. 14CV894-L, 2016 WL 701215, 2016 U.S. Dist. LEXIS 23420, at *7-8 (S.D. Cal. Feb. 18, 2016) (granting plaintiff's request for outbound dial list because the "information is relevant to both class certification and to the merits of the case"); *Cahill v. GC Servs. Ltd. P'ship*, No. 317CV01308GPCMDD, 2018 WL

1791910, 2018 U.S. Dist. LEXIS 63918, at *14-16 (S.D. Cal. Apr. 16, 2018) (compelling production of call list); *Gossett v. CMRE Fin. Servs.*, 142 F.Supp. 3d 1083, 1087 (S.D. Cal. 2015) (granting a motion to compel responses to requests for production of outbound call lists, as such lists were "relevant to the class claims and meritorious claims and defenses in this case").[3]

The information Mr. Campbell seeks, *i.e.*, the list of persons Everything Breaks called that originated from Otto's ottoinsurance.com website, is important to showings Mr. Campbell must make on his class certification motion, such as numerosity, ascertainability, commonality, and predominance. Accordingly, Everything Breaks should be compelled to produce that information in response to Mr. Campbell's discovery requests.

First, the information sought by the discovery requests at issue is relevant to determine whether the class is ascertainable. A class must be defined objectively so that it is possible for class members to identify themselves. *See Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 566 (W.D. Wash. 2012) ("the class definition must be definite enough so that it is administratively feasible for the court to ascertain whether an individual is a member"); *Dunakin v. Quigley*, 99 F. Supp. 3d 1297, 1325 (W.D. Wash. 2015) (same). Put simply, a class is considered to be ascertainable so long as it is defined by objective criteria. *Agne*, 286 F.R.D. at 566; Dunakin, 99 F. Supp. 3d at 1325.

---

[3] *See also, e.g.*, *Martin v. Bureau of Collection Recovery,* No. 10 C 7725, 2011 U.S. Dist. LEXIS 157579 at *8-*12 (N.D. Ill. June 13, 2011) (granting plaintiffs' requests for a call list); *Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 503-504 (N.D. Ill. 2009) (granting plaintiffs' request for defendant's call logs); *Whiteamire Clinic, P.A. v. Quill Corp.,* 2013 WL 5348377, 2013 U.S. Dist. LEXIS 136819, at *8-9 (N.D. Ill. 2013) (granting plaintiff's request for call list; "the information plaintiff seeks…is clearly relevant to class discovery; specifically to the issues of numerosity, commonality, and typicality"); *Starling v. KeyCity Cap.*, LLC, No. 3:21-CV-818-S, 2022 WL 198403, 2022 U.S. Dist. LEXIS 11438, at *10 (N.D. Tex. Jan. 21, 2022) ("District courts, however, routinely permit precertification discovery of call lists and call data in TCPA class actions."); *Johnson v. Moss Bros. Auto Group, Inc*., No. 5:19-cv-2456, 2020 U.S. Dist. LEXIS 167728, at *9-13 (C.D. Cal. Sept. 14, 2020) (holding plaintiff in putative TCPA class action "entitled to some class-wide discovery" at precertification stage and finding call logs, dial lists, and other documents concerning prerecorded messages relevant to issues of numerosity and commonality)

While Mr. Campbell has objectively defined the TCPA classes, Defendant refuses to provide complete basic and relevant information in its possession that will allow Mr. Campbell to further refine his class definition and ascertain all of the members of the proposed classes. The information Mr. Campbell seeks is routinely produced in class discovery for this very reason. *See, e.g., Stemple v. QC Holdings, Inc.*, No. 12-CV-1997-CAB WVG, 2013 U.S. Dist. LEXIS 99582, at *6 (S.D. Cal. June 17, 2013) ("A request for an outbound dial list in a TCPA action is relevant to class certification issues, such as 'the number and ascertainability of potential class members.'" (citation omitted)); *Gaines v. L. Off. of Patenaude & Felix*, A.P.C., No. 13CV1556, 2014 WL 3894348, 2014 U.S. Dist. LEXIS 110162, at *5 (S.D. Cal. June 12, 2014)(in a TCPA case, "the outbound dial list is relevant to the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a), and is therefore discoverable."); *City Select Auto Sales Inc. v. BMW Bank of North America, Inc.*, 867 F.3d 434, 440-41 (3d Cir. 2017) (class-wide call data relevant to ascertainability); *Donnelly,* 263 F.R.D. at 504 ("The court has already concluded that discovery aimed at ascertaining a potential class list is proper.").

Similarly, the information sought by Mr. Campbell supports a showing of numerosity. The numerosity prerequisite is met if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The full scope of the class is relevant to this determination. Only Defendant has information regarding how many leads it obtained from the same source (i.e., Otto) and how many calls it placed to those leads during the class period in violation of the TCPA. Everything Breaks is improperly attempting to defeat Mr. Campbell's anticipated motion for class certification by withholding the information relevant to the proposed classes. Everything Breaks has not explained why producing this additional information would be too burdensome. Indeed, Everything Breaks has already produced a call log of Mr. Campbell and

indicated his information originated with Otto. Mr. Campbell is entitled to this information in order to establish the actual size of the putative classes. *See, e.g.; Cahill,* 2018 WL 1791910, 2018 U.S. Dist. LEXIS 63918 at *14-16 (call list relevant to numerosity); *Stemple,* 2013 U.S. Dist. LEXIS 99528, 2013 U.S. Dist. LEXIS 99582, at *6 (same); *Whiteamire Clinic,* 2013 WL 5348377, 2013 U.S. Dist. LEXIS 136819, at *8-9 (same); *Gaines*, 2014 WL 3894348, 2014 Dist. LEXIS 110162, at *5 (same).

Additionally, the information and documents, including the calls made is relevant to both commonality and predominance. The commonality requirement is met if at least one legal or factual question is common to every member of the class. Fed. R. Civ. P. 23(a)(2). The predominance analysis focuses on whether the legal or factual issues to be resolved on a class-wide basis are more important than those that could only be resolved on an individual basis. Fed. R. Civ. P. 23(b)(3); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Here, for example, one of the common questions to which the information and documents plainly relates is (1) whether Everything Breaks made solicitations to telephone numbers registered on the National Do-Not-Call Registry. *See, e.g., Knutson*, 2013 WL 3746118, 2013 U.S. Dist. LEXIS 98735 at *22 ("The common question is thus, 'were we all called on our cellular telephones, by an . . . artificial or prerecorded voice, on behalf of [Defendants]. . . .'") (emphasis in original); *Doherty v. Comenity Capital Bank*, No. 16cv1321, 2017 WL 1885677, 2017 U.S. Dist. LEXIS 70873, at *9 (S.D. Cal. May 9, 2017) ("The Court finds that outbound dial lists are relevant to establish the issues of numerosity and commonality."); *Whiteamire*, 2013 WL 5348377, 2013 U.S. Dist. LEXIS 136819, at *8-9 (call list relevant to commonality); *Cahill*, 2018 WL 1791910, 2018 U.S. Dist. LEXIS 63918, at *13-14 (same); *Haghayeghi v. Guess?, Inc.*, 168 F. Supp. 3d 1277, 1280 (S.D. Cal. 2016) ("Here, the information can be used toward discovery of whether the

putative class suffered the same alleged injury of receiving unauthorized text messages from Defendant, and thus would bear on issues of commonality and typicality."). What leads originated with Otto and whether the consent mechanism used to obtain the leads is legally sufficient is also a common question that can be answered on a class wide basis.

Everything Breaks' evasive responses and objections to identifying the leads it obtained that originated from Otto and the calls placed to them must be overruled.

## V.    CONCLUSION

For the foregoing reasons, Mr. Campbell respectfully moves for an order compelling Defendant to respond to Interrogatory Nos. 12-15 and produce documents in response to Request Nos. 13, 14, 21 within ten days.[4]

Dated: January 12, 2024                              Respectfully submitted,

  /s/ Craig K. Perry
Craig K. Perry
Nevada Bar No. 3786
CRAIG K. PERRY & ASSOCIATES
6210 N. Jones Blvd. #753907
Las Vegas, Nevada 89136-8985
Telephone: (702) 228-4777
Facsimile: (702) 943-7520
cperry@craigperry.com

Chris R. Miltenberger, Esquire
The Law Office of Chris R. Miltenberger, PLLC
1360 N. White Chapel, Suite 200
Southlake, Texas 76092-4322
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com
Subject to Pro Hac Vice

Eric H. Weitz, Esquire
Max S. Morgan, Esquire

---

[4] Mr. Campbell reserves the right to seek its reasonable attorneys' fees and expenses incurred by filing this motion, as permitted by Rule 37(a)(5)(A).

THE WEITZ FIRM, LLC
1515 Market Street, #1100
Philadelphia, PA 19102
Tel: (267) 587-6240
Fax: (215) 689-0875
max.morgan@theweitzfirm.com
eric.weitz@theweitzfirm.com

*Subject to Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I certify that on January 12, 2024, I electronically filed the foregoing document(s) and that they are available for viewing and downloading from the Court's CM/ECF system, and that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

          _/s/ Tyrin Kanemeier_____
          An Employee of Craig K. Perry & Associates